# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MIKELA RENE R.,[1]                          )
                                            )
               **Plaintiff,**          )
                                            )          **CIVIL ACTION**
**v.**                                      )
                                            )          **No. 24-1156-JWL**
**LELAND DUDEK,[2]**                        )
**Acting Commissioner of Social Security,** )
                                            )
               **Defendant.**          )
_____)


## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) evaluation of Ms. Cook's medical opinion, the court ORDERS that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On February 18, 2025, Mr. Dudek became Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Dudek is substituted for Acting Commissioner Michelle King as the defendant.  Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I.    Background

Plaintiff protectively filed an application for SSDI benefits on April 1, 2022, and for SSI benefits on July 12, 2022.  (R. 22, 183-200).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ found Ms. Cook's medical opinion[3] partially persuasive but rejected several of her opinions without providing a reason for doing so.  (Pl. Br. 8-9).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

---

[3] Ms. Cook is a Licensed Professional Counselor (LPC).

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in <u>Bowling</u>)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

## II. Discussion

Plaintiff quotes this court's opinion in James Bradley H. v. O'Malley, Civ. A. No. 23-2514-JWL, 2024 WL 4103642 at *3 (D. Kan. Sept. 6, 2024) for the proposition that "[i]f the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion." (Pl. Br. 9). She argues, "the ALJ must explain why a medical opinion was not adopted if it conflicts with the RFC." (Pl. Br. 9)

4

(citing <u>Soc. Sec. Ruling</u> (SSR) 96-8p, 1996 WL 374184 at *7).  She goes further, arguing, "Indeed, an ALJ must explain his reasons for accepting some of a physician's restrictions while rejecting others.  <u>Id.</u> (citing <u>Haga v. Astrue</u>, 482 F.3d 1205, 1207-08 (10th Cir. 2007); and <u>Robert A. v. O'Malley</u>, No. 23-1266-EFM, 2024 WL 4039896, at *3 (D. Kan. Sep. 3, 2024) ("And an ALJ may not accept some moderate limitations in an RFC form but reject the other limitations without discussion."  (quoting <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1302–03 (10th Cir. 2007))).

She argues the RFC assessed by the ALJ "did not account for several material limitations from Ms. Cook's opinion," <u>id.</u>, including being off task 20% of the workday, and having moderate limitations in four specific mental abilities; "to remember locations and work-like procedures, … to sustain an ordinary routine without special supervision, … to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, [and] to ask simple questions or request assistance."  <u>Id.</u> 8-9.

Plaintiff argues there can be no argument that the ALJ partially recognized the limitations at issue because she made no mention of such limitations.  <u>Id.</u> 10.  Citing <u>James Bradley H.</u> again, she argues the ALJ's finding Ms. Cook's opinion only partially persuasive does not excuse the failure to discuss the opined limitations at issue, because like here "the ALJ [in that case] failed to account for Dr. Bleazard's opinion Plaintiff must wear an AFO brace or to explain why that limitation was not included in the RFC."

2024 WL 4103642, at *6.  She argues remand is necessary because the limitations opined by Ms. Cook are materially different than the RFC assessed by the ALJ.  (Pl. Br. 11-12).

The Commissioner argues that the ALJ properly evaluated Plaintiff's mental RFC (Comm'r Br 5-7) and substantial evidence supports her finding Ms. Cook's opinion was only partially persuasive.  Id. 8-11.  In his argument, the Commissioner notes the ALJ found Plaintiff has moderate limitations in mental functioning, and the regulations define a moderate limitation in mental abilities as "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."  Id. 10 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c); and citing Fannin v. Comm'r, SSA, 857 F. App'x 445, 448 (10th Cir. 2021) (relying on the regulatory definition of moderate mental limitations)).  He goes on to explain, "A 'fair' ability is generally understood to mean 'average,' 'sufficient but not ample' or 'adequate.'"  Id. 10-11 (quoting Merriam Webster's Collegiate Dictionary 417 (10th Ed. 1996); and citing Black's Law Dictionary (10th Ed. 2014) (defining "fair" as "reasonably good in kind, quality, or degree"); and Cambridge Academic Content Dictionary (defining fair as "average: neither very good nor very bad")).  He concluded, "Plaintiff's implication that moderate limitations necessarily result in workplace restrictions is misplaced."  Id. 11 (citing Bales v. Colvin, 576 F. App'x 792, 798 (10th Cir. 2014) ("ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case.")).

In her Reply Brief, Plaintiff reiterates her arguments.  (Reply 1-2).  She argues the ALJ's articulation of her bases for finding Ms. Cook's medical opinion partially

persuasive is not the issue in this appeal, but "the issue is that, after finding Ms. Cook's opinion was supported by and consistent with the record and only rejecting some limitations, the ALJ did not offer any explanation for rejecting the opined moderate limitations or off-task behavior."  (Reply 2).  Plaintiff opposes the Commissioner's reliance on the definition of a moderate limitation in a mental ability as providing a fair ability to function because "Ms. Cook defined a moderate impairment as: '[i]mpairment levels are compatible with some, but not all, useful functioning.  1 standard deviation below the norm, or 30% overall reduction in performance.'"  Id. 3 (quoting R. 1893). She also notes that "courts have found that moderate limitations do not equate to no impairment and the ALJ should explain when they are rejected."  Id. (citing Haga, 482 F.3d at 1208; Frantz, 509 F.3d at 1302-03; and Robert A., 2024 WL 4039896, at *3.

## A.    Standard for Evaluating Medical Opinions

In 2017, the SSA revised its rules regarding the evaluation of medical evidence and propounded a new regulation entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."  20 C.F.R. §§ 404.1520c, 416.920c (2017).  The regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a) (2017).  The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative

medical finding.  20 C.F.R. § 404.1520c(a)(c)(1-5) (2017).  It provides that the most important factors in evaluating persuasiveness are supportability and consistency.  Id.

The regulation explains that a Social Security disability decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings.  20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017).  The articulation requirement applies for each source, but not for each opinion of that source separately.  Id. (b)(1).  It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision.  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record."  Id. (b)(2).  The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  Id. (b)(3).  Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources.  Id. (d).

In announcing adoption of its final rules, the SSA explained:

Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision. As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be [a] highly deferential standard to us.

<u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017) (emphasis added).

**B.     The ALJ's Relevant Findings**

In finding Plaintiff did not meet or equal the severity of any Listed Impairment at step three of the evaluation process the ALJ found she has mild limitations in understanding, remembering, or applying information and moderate limitations in each of the other three broad areas of mental functioning—interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  She found Plaintiff has the mental RFC to

> perform simple tasks, … [and] have frequent interaction with co-workers and supervisors, but no interaction with the public.  There should be no requirement for telephone work.  [She] can tolerate routine changes in the work setting and would be absent 1 day per month on a consistent basis including the need to leave early or arriver [sic] late due to mental health symptoms.

(R. 27) (finding no. 5, bold omitted).

> The ALJ evaluated Ms. Cook's opinion:
>
> Natalie Cook MA, LPC opined that the claimant would be off task and miss up to 4 days of work due to symptoms.  She noted the claimant had mild to extreme limitations in the functional domains (Exhibit 13F).  The opinion is supported by mental conditions that limit and [is] consistent with mental status exams showing the claimant is oriented with linear thoughts and fair insight and judgment (Exhibit 4F), ongoing treatment and reported activity.  However, there is no evidence in the record of marked or extreme limitations or that the claimant would miss 4 days of work [per month].  The opinion is partially persuasive.

(R. 32).

Finally, the ALJ noted, "The vocational expert relied on her professional experience in addressing being off task." (R. 34).

### C.    Analysis

Plaintiff ignores the court's standard of review in a Social Security decision—whether the ALJ applied the correct legal standard, and whether substantial record evidence supports the ALJ's factual findings. Lax, 489 F.3d at 1084. The ALJ applied the correct legal standard noted above in evaluating Ms. Cook's medical opinion, 20 C.F.R. §§ 404.1520c, 416.920c, and found her opinion only partially persuasive because there is no record evidence "of marked or extreme limitations or that the claimant would miss 4 days of work." Id. 32. Thus, the ALJ applied the correct legal standard in discounting Ms. Cook's opinion and although Plaintiff argues the ALJ should have accorded greater weight to Ms. Cook's opinion or provided greater explanation why he did not do so, she does not argue the ALJ erred in finding the opinion only partially persuasive, but rather relies on that finding to imply that the ALJ should have credited more of the opinion or provided more explanation why she did not do so.

As noted above, the Commissioner explained the reasons for rejecting the treating physician rule and deciding to evaluate opinions for persuasiveness in 2017. One of the reasons for doing so was because before that change courts were focusing more on whether the agency had sufficiently articulated the weight it gave treating source opinions than on whether substantial evidence supported the agency's decision. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5,854, 2017 WL 168819. Thus, the change to persuasiveness evaluation rather than relative weighing of

the various opinions was in major part to return the focus of judicial review to whether substantial evidence supports the agency's decision. Thus, Plaintiff having admitted the ALJ properly found Ms. Cook's opinion only partially persuasive, the only question remaining for the court is whether substantial record evidence—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion—supports the ALJ's RFC assessment. It does.

Plaintiff's appeal to <u>James Bradley H.</u> and to SSR 96-8p does not require a different outcome because they require an ALJ to explain why a medical opinion was not adopted if the opinion conflicts with the RFC assessed. Here, Ms. Cook's opinion conflicts with the RFC assessed but the ALJ explained why she found that opinion only partially persuasive. That is all <u>James Bradley H.</u> and SSR 96-8p require.

Plaintiff's appeal to the cases of <u>Frantz</u>, 509 F.3d at 1302-03; <u>Haga</u>, 482 F.3d at 1207-08; and <u>Robert A.</u>, 2024 WL 4039896 at *3; are to a similar effect. The court in <u>Haga</u> was considering the medical opinion of a consulting mental health professional, Dr. Rawlings, who had opined the plaintiff had moderate limitations in seven functional categories. 482 F.3d at 1207. Plaintiff argued the ALJ assessed an RFC consistent with three of the moderate restrictions opined but inexplicably rejected the other four restrictions without explanation, and that the opinion of <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-10 (10th Cir. 1996) requires that the ALJ must discuss uncontroverted evidence he chooses not to rely upon. 482 F.3d at 1207. The court appears to have accepted the plaintiff's argument, but decided the case by finding the Commissioner's response to that argument was merely <u>post-hoc</u> rationalization. 482 F.3d at 1207-08. The court notes that

here the ALJ explained why she found Ms. Cook's opinion only partially persuasive so the ALJ's decision to reject parts of it was not inexplicable. Moreover, and most importantly, Haga was decided under the treating physician rule, 20 C.F.R.§§ 404.1527(d), 416.927(d) (2006) ("How we weigh medical opinions"), wherein the agency and by extension courts were tasked with assessing the relative weight of the various medical opinions, but not with evaluating their persuasive value. Frantz, was decided eight months after Haga, and in that case the court specifically cited the fact it was tasked with relative weighing of medical opinions under 20 C.F.R. §§ 404.1527(d), 416.927(d) (2006). Frantz, 509 F.3d at 1302. The court noted the ALJ "did not discuss what weight he gave to [the] opinion" of a clinical nurse specialist who treated the plaintiff, noting the ALJ ignored evidence supporting disability and highlighted evidence suggesting nondisability, contrary to Clifton. Id. Thus, that case was explicitly decided using relative weighing of medical opinions. Finally, Robert A., 2024 WL 4039896 is a district court opinion not binding on this court, and it relies upon Frantz and other opinions decided under the treating physician rule, so it does not require a different result in this case.

After the decisions of Frantz, Haga, and Clifton, the SSA promulgated 20 C.F.R. §§ 404.1520c, and 416.920c changing the procedure from relative weighing of medical source opinions to evaluating the persuasiveness of medical source opinions. Here, the ALJ found Ms. Cook's medical opinion only partially persuasive and, in accordance with SSR 96-8p, explained why she had discounted that opinion's persuasiveness. Thus, the only remaining question is whether substantial evidence supports the ALJ's finding.

Plaintiff's first contrary argument is that Ms. Cook opined additional moderate limitations which require additional RFC limitations in the abilities "to remember locations and work-like procedures, … to sustain an ordinary routine without special supervision, … to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, [and] to ask simple questions or request assistance." (Pl. Br. 8-9) (quoting R. 1893-94). However, Plaintiff has the burden to show error in the ALJ's decision and the ALJ has made an RFC assessment, but Plaintiff points to no record evidence which compels finding greater mental limitations than those assessed and the court finds none. Moreover, Plaintiff does not demonstrate that Ms. Cook's limitations are not encompassed within the RFC limitations assessed. Ms. Cook's opinion itself certainly does not compel greater limitations because, as Plaintiff tacitly admits, the ALJ properly found her opinion only partially persuasive.

Plaintiff also appears to argue that Ms. Cook provided a different definition for "moderate limitation" than used by the agency, suggesting the moderate limitations opined by Ms. Cook may be more limiting than moderate limitations assessed within the meaning of the agency's regulations. This suggestion fails for two reasons. First, the ALJ found Ms. Cook's marked and extreme limitations not supported by the record evidence, thereby precluding finding any limitations more severe than those that are moderate within the meaning of the Act—which is marked. Second, and most importantly, mild, moderate, marked, and extreme are terms of art describing mental limitations within the context of disability determination and neither Ms. Cook, Plaintiff,

13

Plaintiff's counsel, this court, nor anyone else may substitute a different definition in a particular case.  Plaintiff has not met her burden to prove error in this regard.

Finally, Plaintiff argues the ALJ failed to explain specifically why Plaintiff was not off task ten percent or more of the time (20 percent as opined by Ms. Cook).  Because the ALJ properly found Ms. Cook's opinion only partially persuasive, there is no reason for her to provide a further explanation why she did not accept Ms. Cook's off-task opinion.  Plaintiff points to no evidence compelling a finding that Plaintiff would be off task ten percent or more of the time.   Moreover, to the extent Plaintiff may be arguing the ALJ merely forgot to consider off-task behavior, the evidence suggests otherwise.  As quoted above, the ALJ specifically noted in her decision that the vocational expert had relied on professional experience when she opined regarding off task behavior.  (R. 34).  The ALJ hearing transcript supports the ALJ's finding.  The hearing transcript reveals the ALJ questioned the expert regarding a hypothetical individual with the RFC ultimately assessed in this case and was told such an individual would be able to perform the representative jobs the ALJ relied upon in her decision.  (R. 62-63).  He then asked the expert if such an individual who was also off task ten percent of an eight-hour workday could perform the representative jobs.  Id. 63.  The expert responded, "In my professional opinion and not addressed in the DOT, if a person's off task 10% or more of the day for whatever reason, they could not do competitive employment."  (R. 64.).  This colloquy, along with the ALJ's statement in her decision makes it abundantly clear the ALJ considered off task behavior in making her decision in this case and determined Plaintiff would not be off task ten percent or more of an eight-hour workday.  Plaintiff does not

point to record evidence which would compel a contrary finding.  Plaintiff has not met her burden to show error in the ALJ's decision in this case.

The court realizes that in the case of <u>James Bradley H.</u>, when considering Dr. Bleazard's opinion that the plaintiff required the use of an AFO (ankle foot orthotic) brace, this court applied a different standard (whether the ALJ accounted for the doctor's opinion) than it applied in this case (whether substantial evidence supports the ALJ's finding).  The plaintiff's application for disability benefits in <u>James Bradley H.</u> was filed in 2021.  2024 WL 4103642, at *1.  Therefore, as explained above the question for the court, after deciding the ALJ properly found Dr. Bleazard's opinion only partially persuasive, was whether substantial evidence supported the RFC assessed.  Although the court is in no position now to reevaluate the decision in <u>James Bradley H.</u>, it is conceivable that the decision may have been the same even applying the correct standard due to record evidence of left foot drop, bad club foot, fallen multiple times, etc.  <u>Id.</u> *3. In future the court will apply the standard explained in this decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision in this case.

Dated April 22, 2025, at Kansas City, Kansas.


s:/  John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

15